**SO ORDERED.**

**SIGNED this 6th day of September, 2023.**



_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Catherine Mary Grossman Myatt, | ) | Case No. 23-50239 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |

### OPINION AND ORDER
### OVERRULING TRUSTEE'S OBJECTION TO EXEMPTION

THIS MATTER comes before the Court on the Objection to Debtor's Claim for Property Exemptions (Docket No. 14, the "Objection") filed by the chapter 7 trustee (the "Trustee"). The Trustee objected to the exemption that Catherine Mary Grossman Myatt (the "Debtor") claimed in her interest in her former husband's 401(k) retirement account. The Debtor asserts that the interest, which totals $22,677.31, is fully exempt under N.C. Gen. Stat. § 1C-1601(a)(9) and 11 U.S.C. § 522(b)(3). For the reasons discussed below, the Court will overrule the Objection, finding that the Debtor possesses an interest in her former husband's 401(k) account that is excluded from the bankruptcy estate.

JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) and Local Civil Rule 83.11, the United States District Court for the Middle District of North Carolina has referred this proceeding to this Court. An objection to a debtor's claim of exemption is a core proceeding under 28 U.S.C. § 157(b)(2)(B) in which this Court is statutorily authorized to enter a final judgment. The Court also has constitutional authority to enter a final order in this matter because, even though the exemption may derive from state law, "the right to exempt property from the bankruptcy estate is established by an express provision of the Bankruptcy Code (section 522) and is central to the public bankruptcy scheme." *In re Carlew*, 469 B.R. 666, 673 (Bankr. S.D. Tex.), *aff'd sub nom. W. v. Carlew*, No. 12-0913, 2012 WL 3002197 (S.D. Tex. July 23, 2012).

BACKGROUND

On April 17, 2023, the Debtor commenced the above-captioned case by filing a petition under chapter 7 of the Bankruptcy Code. Prior to the petition date, the Debtor and her former spouse, Joseph Myatt, were parties to a divorce proceeding in Davidson County District Court. The state court entered a Consent Order for Equitable Distribution & Alimony, which incorporated the agreed division of marital property executed by the Debtor and Mr. Myatt. (Docket No. 14, Ex. A, the "Consent Order").[1]  The Consent Order provides for the Debtor to receive a distributive award of $22,677.31 to be paid through a Qualified Domestic Relations

---

[1] The Trustee filed a copy of the Consent Order as an exhibit to his Objection. (Docket No. 14, Ex. A).

Order (QDRO). As of the petition date, the funds remained in Mr. Myatt's retirement account.

The Debtor listed the award in her bankruptcy schedules under the category "other amounts someone owes you." (Docket No. 1). She also asserted an exemption under N.C. Gen. Stat. § 1C-1601(a)(9) and 11 U.S.C. § 522(b)(3) in the total funds of both her individual retirement account (IRA), valued at $50.00, and the distributive award of $22,677.31 still located in her ex-spouse's retirement account. In both Schedule A and on her exemptions Form 91C, the Debtor describes the distributive award in the same manner:

> Per Consent Order for Equitable Distribution & Alimony, spouse will transfer to Debtor from spouse retirement account rolling directly in to Debtor's IRA. No cash proceeds will be withdrawn at the time of roll-over.

(Docket No. 1).

The Trustee timely filed the Objection under Federal Rule of Bankruptcy Procedure 4003(b)(1) asserting that the Debtor does not own the $22,677.31 distributive award nor any interest in the retirement plan that is to be the source of the payment. (Docket No. 14, ¶¶ 7, 9). Alternatively, even if the Consent Order does grant the Debtor an ownership interest in the distributive award or Mr. Myatt's 401(k) account, the Trustee argues that any such award is not effective without a QDRO. (Docket No. 18, ¶ 5). In either scenario, the Trustee maintains that the Debtor is left only with a claim against her ex-spouse, which is property of the bankruptcy estate and does not qualify for the asserted exemptions. Finally, even if the Court finds the Debtor has an effective ownership interest in the $22,677.31,

the Trustee counters that the funds are nevertheless property of the estate and may not be exempted under 11 U.S.C. § 522(b)(3) or N.C. Gen. Stat. § 1C-1601(a)(9) because they are not "retirement funds." (Docket No. 14, ¶ 10). *See Clark v. Rameker*, 573 U.S. 122, 127 (2014). The Trustee requests that the Court sustain the Objection and deny the Debtor's claimed exemption as to the $22,677.31 distributive award.

The Debtor filed a response to the Objection and supplemental brief, along with supporting caselaw, contending that the Debtor has a proprietary ownership interest in the distributive award of $22,677.31 located in Mr. Myatt's retirement account. (Docket No. 19). The Debtor argues that the execution of a QDRO is not a prerequisite for establishing that ownership interest and, therefore, the distributive award is properly exempted under N.C. Gen. Stat. § 1C-1601(a)(9) or 11 U.S.C. § 522(b)(3). This finding, the Debtor concludes, strongly aligns with the intent of the North Carolina legislature to protect retirement assets. Given the "considerable amount of time between entry of an Equitable Distribution Order and a QDRO," the Debtor asserts that allowing a dependent spouse's interest in retirement accounts to be subject to creditors' collection efforts in that interim would be "against public policy and the purpose of the exemptions." (Docket No. 19, ¶ 17). Based on that reasoning, the Debtor asks that the Court overrule the Objection and allow the claimed exemptions in full.

The Court held a hearing on the Objection on June 27, 2023, at which Daniel C. Bruton appeared in his capacity as Trustee and Wendell Wes Schollander, III,

appeared on behalf of the Debtor. The parties offered legal arguments on the extent of the Debtor's ownership interest in the distributive award and whether that interest may be properly exempted under state or federal law. At the conclusion of that hearing, the Court took the matter under advisement.[2]

Neither party requested an evidentiary hearing, instead submitting this matter for ruling on the papers, including the Consent Order, as well as the arguments of counsel. The Court subsequently entered an order reopening the evidentiary record for the limited purpose of determining whether Mr. Myatt's account is ERISA-qualified. (Docket No. 22). In response to the order, the Trustee and Debtor's counsel stipulated and agreed that, based upon a review of the relevant documentation, Mr. Myatt's retirement plan "is an ERISA-qualified 401(k) plan/account." (Docket No. 23). The Court accepts the stipulation of the parties on this issue and finds that Mr. Myatt possesses a 401(k) retirement account.

DISCUSSION

A. The Consent Order Established the Debtor's Ownership Interest

In North Carolina, a respective spouse's right to marital property is initially unvested during the marriage. *See* James R. Turner, 1 EQUITABLE DISTRIBUTION OF PROPERTY § 2:7 (4th ed. 2023). During the intact marriage, "title controls ownership" and "the marital interest is, in essence, a contingent interest which

---

[2] Both the Trustee's supplemental brief and the Debtor's response were filed untimely and in contravention to this Court's local rules. Neither party, however, asserted any prejudice from the late filings. Given the absence of any prejudice, and in the interest of deciding the Objection on a full consideration of the merits, the Court will consider the legal arguments presented in those late-filed briefs.

springs into being only … upon the separation of the parties." Suzanne Reynolds, 2 REYNOLDS ON NORTH CAROLINA FAMILY LAW § 6.05 (6th ed. 2022). Upon separation, each spouse possesses a respective interest in "marital property," which North Carolina defines as all real and personal property acquired by either spouse or both spouses during marriage but before separation; by comparison, separate property is any real or personal property acquired individually by a spouse before marriage, or by devise, descent, or gift. *See* N.C. Gen. Stat. § 50-20(b); *Carpenter v. Carpenter*, 781 S.E.2d 828, 837 (N.C. Ct. App. 2016). There is also a third category, divisible property, which is any real or personal property acquired by either spouse after the date of separation, but before the date of distribution. *Id.* By statute, marital property includes "all vested and nonvested pension, retirement, and other deferred compensation rights[.]" N.C. Gen. Stat. § 50-20(b)(1). Only marital and divisible property are subject to equitable distribution in the event of divorce and there is a rebuttable presumption that property acquired after the date of marriage and before separation is marital property. *See* N.C. Gen. Stat. § 50-20(b)(1).

Upon separation, each spouse has a claim to an equitable distribution of the marital and divisible property. *See* N.C. Gen. Stat. § 50-20; *Perlow v. Perlow*, 128 B.R. 412, 415 (E.D.N.C. 1991). At this stage, before a trial court has entered a final order for equitable division, neither spouse has a right to "particular marital property;" instead, both have "a right to the equitable distribution of that property, whatever a court should determine that property is." *Wilson v. Wilson*, 325 S.E.2d 668, 670 (N.C. Ct. App. 1985). Until the trial court enters a final distribution order,

a spouse's interest in marital property, including any retirement benefits, remains unfixed and the spouse is left only with a general right to equitable distribution. *See Kroh v. Kroh*, 571 S.E.2d 643, 645 (N.C. Ct. App. 2002) (holding that wife "[did not] have a legal claim" to spouse's retirement account where equitable distribution proceeding remained pending).

A final order resolving an equitable distribution proceeding, however, fixes the parties' rights and transforms the more general right to equitable distribution into concrete interests in specific property. *See, e.g.*, *Welch v. Welch*, 886 S.E.2d 921, 924 (N.C. Ct. App. 2023); *Patterson ex rel. Jordan v. Patterson*, 529 S.E.2d 484, 490 (N.C. Ct. App. 2000); *In re Chilson*, No. 1:15-CV-00020-MR, 2016 WL 1079149, at *6 (W.D.N.C. Mar. 18, 2016). After being signed and entered by the trial court, an equitable distribution order such as the Consent Order is treated as an award under N.C. Gen. Stat. § 50-20.1 and each spouse's interests "vest" on the date of the order's entry. *See Welch*, 886 S.E.2d at 924 ("Ms. Welch's interest in the Schwab IRA vested in October 2008 when the [equitable distribution consent order] was entered.") (internal citation omitted); *Patterson*, 529 S.E.2d at 490 (finding language dividing a retirement plan, which was "incorporated into the Consent Order executed by the trial court pursuant to an equitable distribution claim," was enough "to effectuate a valid assignment of retirement benefits"); *Chilson*, 2016 WL 1079149, at *6 (holding that the valid domestic relations order "created the [debtor's] ownership interest in the [retirement] account in the first place"); *In re Seddon*, 255 B.R. 815, 818 (Bankr. W.D.N.C. 2000) ("The debtor in this case

obtained an interest in her ex-husband's CSRS pension through equitable distribution orders in state court.").

The entry of an equitable distribution order, therefore, represents a key moment in a divorce-related division of property interests. If the Debtor and her ex-spouse were separated and still in the midst of a pending proceeding, the Trustee may be correct that the Debtor would merely possess a claim or right to equitable distribution rather than an interest in specific property.[3] However, in this case the Debtor has already concluded the proceeding through entry of the Consent Order. The Debtor's interest is no longer an amorphous, unknown claim to as-yet-undivided marital property; rather, the Debtor's interests are now explicated and firmly fixed in the Consent Order. The terms of the Consent Order, signed and entered by the state court on October 21, 2022, "constitute a full and final resolution of [the Debtor's] claims for Equitable Distribution, Post-Separation Support/Alimony and Attorney Fees, and [Mr. Myatt's] claims for Equitable Distribution." (Docket No. 14, Ex. A, p. 2).

Separation agreements incorporated into court orders are construed and interpreted in the same manner as other contracts. *Jones v. Jones*, 824 S.E.2d 185,

---

[3] The Debtor also argued that she had a property interest in the retirement funds "from the moment of separation," (Docket No. 20), relying on a line of cases from the North Carolina Court of Appeals and Federal District Courts finding that a dependent spouse has a "proprietary" interest in military pensions that exists prior to entry of any equitable distribution order. *See Walston v. Walston (In re Walston)*, 190 B.R. 66, 69 (E.D.N.C. 1995); *Brown v. Brown*, 886 S.E.2d 656, 663 (N.C. Ct. App. 2023). Because the prepetition Consent Order resolved the Debtor's equitable distribution proceeding and fixed her ownership interest in the retirement funds, the Court need not address whether the Debtor held any interest prior to the order's approval and entry by the Davidson County District Court.

195 (N.C. Ct. App. 2019) (citing *Gilmore v. Garner*, 580 S.E.2d 15, 17 (N.C. Ct. App. 2003)). As with any other contract, a marital agreement "encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion." *In re Estate of Cracker*, 850 S.E.2d 506, 509 (N.C. Ct. App. 2020) (quoting *Lane v. Scarborough*, 200 S.E.2d 622, 624-25)).

Here, paragraph 7 of the Consent Order pertains to the division of marital property, with separate subparagraphs allotted to real property, motor vehicles, bank and financial accounts, and retirement accounts. Subparagraph (d), which pertains to retirement assets, provides that, "*[o]ther than the distributive award mentioned herein*," the Debtor and Mr. Myatt would retain their respective interests, "whether vested or not, in all retirement plans, defined benefit plans, defined contribution plans, pensions, IRA's, 401K's, stocks, bonds, and other intangibles currently held in [their own] name." (Docket No. 14, Ex. A, p. 5, ¶ 7(d)) (emphasis added).[4] The referenced "distributive award" is defined further below in paragraph 10 of the Consent Order:

> [The Debtor] and [Mr. Myatt] have determined and agreed upon the
> date of separation value and division of all marital and divisible

---

[4] The complete section within the Consent Order discussing treatment of retirement accounts reads:
  Retirement Accounts/Investment Accounts/Life Insurance: Other than the distributive award mentioned herein, [Mr. Myatt] shall retain his interest, whether vested or not, in all retirement plans, defined benefit plans, defined contribution plans, pensions, IRA's, 401K's, stocks, bonds, and other intangibles currently held in his name. [The Debtor] shall retain her interest, whether vested or not, in all retirement plans, defined benefit plans, defined contribution plans, pensions, IRA's, 40IK's, stocks, bonds, and other intangibles currently held in her name. This division of the individual retirement accounts, defined benefit plans, defined contribution plans, pensions, IRA's, 401K's, stocks, bonds, bank accounts and other intangibles is a fair and reasonable division of property.
(Docket No. 14, Ex. A, p. 5, ¶ 7(d)).

> property. The parties agree that [the Debtor] is entitled to a distributive award of a sum certain of $22,677.31. [Mr. Myatt] shall make this payment through a Qualified Domestic Relations Order (QDRO) to be drafted by [the Debtor's] attorney. [The Debtor's] attorney shall ensure that said QDRO is drafted in a timely manner. [The Debtor] and [Mr. Myatt] shall cooperate in providing and signing any and all necessary documents to ensure that the QDRO is completed in a timely manner.

(Docket No. 14, Ex. A, p. 6, ¶ 10). The phrase "other than the distributive award mentioned herein" links paragraph 7(d), which discusses the spouses' retirement accounts, to paragraph 10's discussion of the distributive award of $22,677.31. Reading the two connected paragraphs together shows that the distributive award is to be paid by Mr. Myatt through one of the sources discussed in paragraph 7(d), such as a retirement plan, IRA, 401(k), stocks, or bonds. Paragraph 10 further states that Mr. Myatt will make the payment through a QDRO, which indicates that the source of the payment is either a 401(k) plan or is ERISA-qualified, or both.[5] The Consent Order, therefore, closely connects the distributive award to the division and distribution of the parties' retirement accounts. In fact, subparagraph (d) contains the only reference to the distributive award within paragraph 7. Therefore, based on its language and context, the Court finds that the Consent Order reflects the parties' agreement that the Debtor is entitled to $22,677.31 from

---

[5] As defined by the Employment Retirement Income Security Act (ERISA), which covers defined benefit plans and defined contribution plans, a QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i). The QDRO allows the Debtor to transfer retirement funds from Mr. Myatt's 401(k) account to her own IRA tax free, at which point the funds therein would be afforded the same treatment as an IRA the Debtor would have possessed and funded through her own employment. *See* 1 Vorris J. Blankenship, TAX PLANNING FOR RETIREES § 5.04 (2023); IRC § 408(d)(6); IRS Publication 590A (2022).

Mr. Myatt's 401(k) retirement account and, accordingly, orders Mr. Myatt to make the payment through a QDRO in a timely manner.

In sum, by the time the Debtor filed her petition, her rights had transformed, through entry of the Consent Order, from a more general right to an equitable distribution into a fixed right to specific property interests. As stated therein, the Consent Order "constitute[s] a full and final resolution" of the Debtor's and Mr. Myatt's claims for equitable distribution, meaning it is final order resolving all of the parties' equitable distribution issues and distributing the marital property. *See Whitworth v. Whitworth*, 731 S.E.2d 707, 714, 710 (N.C. Ct. App. 2012) (finding that "final disposition occurred … with the entry of the final equitable distribution consent order/judgment."). The Consent Order not only vested the Debtor's interests in certain property, such as the $22,677.31 interest in the 401(k) retirement account, but also extinguished any contingent interests she may have had to marital property that was distributed to her ex-spouse. James R. Turner, 3 EQUITABLE DISTRIBUTION OF PROPERTY § 9.5 (4th ed. 2023) ("An order transferring an asset to one spouse destroys any property right that the other spouse may have in the asset."). The $22,677.31 interest provided to the Debtor is not akin to distributive cash awards that are untethered to specific marital property; rather, the interest was directly linked to Mr. Myatt's 401(k) retirement account. Given its language and finality, the Court finds that, upon entry of the Consent Order, the Debtor's general right to equitable distribution became a specific, vested property interest in the amount of $22,677.31 in Mr. Myatt's 401(k) retirement account.

11

B. The Absence of a QDRO Does Not Affect the Debtor's Ownership Interest

The Trustee argues that the distributive award provided to the Debtor in the Consent Order is not effective without a QDRO. (Docket No. 18, ¶ 5). Although the Trustee is correct that the Consent Order would not qualify as a QDRO, that fact does not preclude a finding that the Consent Order vested the Debtor's ownership interest in the amount of $22,677.31 in Mr. Myatt's 401(k) account. Rather, the division of the parties' property interests was completed upon entry of the Consent Order; the envisioned QDRO is merely a procedural device for implementing the terms of that Consent Order. James R. Turner, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:20 (4th ed. 2023).

State courts have adopted a two-pronged approach to dividing retirement benefits as part of an equitable distribution of marital property— "[t]he first order is the underlying substantive order stating the rights of the parties to the retirement benefits at issue," while the second "is a DRO[6] – a separate order aimed at the plan administrator, directing it to send a separate benefit check to the nonowning spouse." *Id.* This divided approach reflects a deliberate choice made by state courts. Attempting to draft the initial substantive order to also meet the requirements of a QDRO "is rarely advisable, as such an order will contain many terms involving other assets and issues" and may simply "confuse the plan administrator, who could respond by refusing to qualify the order." *Id.* Instead, "the

---

[6] As noted by Turner, "a state court cannot enter a *qualified* domestic relations order. All it can do is enter a domestic relations order" and the "plan administrator determines whether the order is qualified – whether a Q can be added to the DRO." James R. Turner, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:20 (4th ed. 2023).

best procedure is almost always to draft the DRO as a separate document, focusing only upon dividing retirement benefits in a form which the plan administrator will recognize." In line with this rationale, a "majority of states" adhere to the "general rule in modern practice" that a DRO "is not a substantive order at all" but is instead "a procedural device for enforcing the terms of the underlying substantive order." *Id.* (citing *White v. White*, 568 S.E.2d 283, 285 (N.C. Ct. App. 2002), *aff'd*, 579 S.E.2d 248 (N.C. 2003)). As the Ninth Circuit Court of Appeals remarked, "the QDRO provisions of ERISA do not suggest that [the alternate payee] has no interest in the plan [ ] until she obtains a QDRO, they merely prevent her from enforcing that interest until the QDRO is obtained." *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 421 (9th Cir. 2000) (quoting *In re Gendreau*, 122 F.3d 815, 819 (9th Cir. 1997)).

North Carolina courts have also recognized this majority rule, finding that a QDRO is unnecessary to establish a spouse's right to retirement benefits where the underlying equitable distribution order or divorce decree has already done so. In 2000, the North Carolina Court of Appeals held that a consent equitable distribution order – not the QDRO – vested retirement benefits in the ex-spouse. *Patterson*, 529 S.E.2d at 491. The court noted that, "while entry of a QDRO may have been contemplated, the Consent Order reflects that Carolyn's interest existed separate from any prospective QDRO." *Id.* The court explained that, while the QDRO would allow the pension benefits to flow directly to both parties in the

proportion ordered by the court in the consent order, "[t]he purpose of the QDRO was to 'preserve' Carolyn's interest, not create it." *Id.*

The same appellate court reached a similar conclusion earlier this year in *Welch*, 886 S.E.2d at 925, finding that a spouse's motion for a DRO to transfer a former spouse's IRA account was "not a crafty means to amend the distribution awarded in a [consent equitable distribution order]," but was merely an attempt "to effectuate the judgment" without altering the original order. The Court reiterated the holding in *Patterson* and determined that the requested DRO was merely "adjunct" to the underlying distribution order. *Id.* at 925-26. The court further held that the spouse's motion for a DRO more than 10 years after entry of the divorce judgment was not barred by the 10-year statute of limitations on actions to enforce a judgment, as the motion sought to *implement* a term of a divorce judgment and was not a separate *action to enforce* that judgment. *Id.* The court concluded that "to hold otherwise would deprive spouses of their vested property under an equitable distribution order if the property were not distributed in a timely manner as happened here." *Id.*

Federal courts applying North Carolina law have similarly found that underlying equitable distribution orders or divorce decrees establish the property interest and QDROs are tools for implementing those rights. *See, e.g.*, *Chilson*, 2016 WL 1079149, at *6 (finding that "technical shortcomings [in a DRO] may preclude the plan administrator from paying such benefits, [but] they have no effect on the validity of the domestic relations order which created the ownership interest in the

14

first place"); *Seddon*, 255 B.R. at 818 ("The debtor in this case obtained an interest in her ex-husband's CSRS pension through equitable distribution orders in state court."); *Zeitler v. Martel*, 255 B.R. 172, 177 (E.D.N.C. 1999) (finding the absence of a QDRO did not impact the appellee's right to payments awarded in the divorce dissolution decree), *aff'g In re Zeitler*, 213 B.R. 457 (Bankr. E.D.N.C. 1997).

The Trustee accurately states that the Consent Order does not qualify as a QDRO under ERISA, but that was never its intended purpose. Instead, the Davidson County District Court, and the parties themselves, envisioned a second order – a QDRO – that, if approved by the plan administrator as such, would implement the Debtor's rights established and recognized under the Consent Order and allow for transfer of the retirement funds into the Debtor's IRA. The absence of a QDRO does not impact the Debtor's $22,677.31 interest in the 401(k) retirement account; that interest already vested in the Consent Order.[7]

---

[7] In his supplemental brief, the Trustee points to several cases from the Fourth Circuit Court of Appeals and this district he claims support his argument that any interest the Debtor may have in the 401(k) retirement account is "effectively trump[ed]" by ERISA and ineffective without a QDRO. (Docket No. 18, ¶¶ 7-10) (*citing, e.g.*, *Metropolitan Life Ins. Co. v. Petit*, 164 F.3d 857 (4th Cir. 1998); *Boyd v. Metropolitan Life Ins. Co.*, 636 F.3d 138 (4th Cir. 2011); *Davenport v. Davenport*, 146 F. Supp.2d 770 (M.D.N.C. 2001); *In re Dye*, 2004 WL 2249503 (Bankr. M.D.N.C. 2004)). The decisions the Trustee cites for support, however, addressed wholly different questions than that presented here. In *Petit*, *Boyd*, and *Davenport*, the courts considered whether a plan administrator properly distributed life insurance proceeds following the death of the former spouse and policy holder. *Petit*, 164 F.3d at 859; *Boyd*, 636 F.3d at 138; *Davenport*, 146 F. Supp.2d at 774-76. In those cases, the question was not whether a domestic relations order vested an interest in a debtor, but whether an order or consent agreement was effective to *implement*, through a plan administrator, an interest in an ERISA-qualified plan. In *Dye*, the court considered whether an equitable distribution order, which granted the non-filing spouse "a lien" against the debtor's 401(k) account and profit-sharing plan, was enforceable given the anti-alienation provisions of ERISA. *Dye*, 2004 WL 2249503, at *6. The court concluded that, because the order "does not qualify as a QDRO, it does not create a lien or other interest *that can be enforced* against Debtor's interests in the ERISA plans[.]" *Id.* (emphasis added). The Court has carefully reviewed the caselaw proffered by the Trustee, but it finds those cited decisions make no holdings apposite to this case. Critically, none of the decisions conflict with this Court's determination here that, while a QDRO is necessary to *implement* a debtor's interest in

C. The Distributive Award is Excluded From The Debtor's Bankruptcy Estate

Having determined that the Consent Order vested the Debtor's ownership interest in the $22,677.31 within Mr. Myatt's 401(k) account, the Court must then consider whether first, the interest is part of the bankruptcy estate and, if so, whether it is exempt under either or both North Carolina law and the Bankruptcy Code. If the Court determines that the Debtor's interest is excludable from the bankruptcy estate altogether, it need not consider whether it is exemptible from the estate under federal or state law. *See Chilson*, 2016 WL 1079149, at *5.

The filing of a bankruptcy petition creates an estate, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case … wherever located or by whomever held." 11 U.S.C. § 541(a)(1). "In enacting the [Bankruptcy] Code, Congress sought to define broadly a debtor's estate, but also recognized that certain property should be excluded from the estate." *Shumate v. Patterson*, 943 F.2d 362, 365 (4th Cir. 1991) (citing 11 U.S.C. § 541(b), (c)(2)), *aff'd*, 504 U.S. 753 (1992).

In interpreting the language of 11 U.S.C. § 541(c)(2), the Supreme Court confirmed that a debtor may exclude from property of the estate any interest – as a plan participant – in a plan or trust that includes a restriction on transfer enforceable under nonbankruptcy law, including an ERISA-qualified plan. *Patterson v. Shumate*, 504 U.S. 753, 758 (1992). Similarly, despite some disagreement, "[m]ost courts addressing the issue … have determined that a

an ERISA-qualified retirement plan, the initial equitable distribution order can be enough on its own to vest that interest in the debtor.

16

debtor's interest [as an alternate payee] in the undistributed funds of an ERISA-qualified plan is not property of the bankruptcy estate." *In re Dyckman*, No. 1:10-bk-08586-MDF, 2012 WL 1302613, at *4 (Bankr. M.D. Pa. Apr. 16, 2012) (citing *Nelson v. Ramette (In re Nelson)*, 322 F.3d 541, 545 (8th Cir. 2003)). Under this line of reasoning, "[t]herefore, a person who acquires an interest in an ERISA plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant [himself] could have excluded it." *Nelson*, 322 F.3d at 545; *see also Ostrander v. Lalchandani (In re Lalchandani)*, 279 B.R. 880 (B.A.P. 1st Cir. 2002); *In re Farmer*, 295 B.R. 322, 324-25 (Bankr. W.D. Wis. 2003); *In re Hthiy*, 283 B.R. 447, 451 (Bankr. E.D. Mich. 2002); *Seddon*, 255 B.R. at 819. Because the QDRO is merely a procedural device, courts have also found that a debtor's interest is excluded even in the absence of a QDRO, where an equitable distribution order or divorcee decree establishes the debtor's interest. *See, e.g.*, *Chilson*, 2016 WL 1079149, at *5-6; *Walsh v. Dively (In re Dively)*, 551 B.R. 570, 575-76 (W.D. Pa. 2016); *Wilson v. Wilson (In re Wilson)*, 158 B.R. 709, 711 (Bankr. S.D. Ohio 1993).

In *Chilson*, the District Court for the Western District of North Carolina summarized this reasoning:

> Here, it is undisputed that the Chilsons entered into a separation agreement with the intent to give the Debtor an interest in the TIAA-CREF account as of the date of their divorce. It is further undisputed that the state court entered a domestic relations order incorporating the Chilsons' agreement and awarding the Debtor a portion of that account. Accordingly, notwithstanding the absence of a "qualified" domestic relations order, the Debtor obtained a legal and equitable ownership interest in the ERISA-qualified TIAA-CREF account as of the date of her divorce from Mr. Chilson. Because it is ERISA-qualified, the

> Debtor's interest in that account is, by its nature, excluded from the
> bankruptcy estate and thereby not subject to turnover.

*Chilson*, 2016 WL 1079149, at *6 (citing *Patterson*, 504 U.S. at 759); *see also Walsh*,
551 B.R. at 576 (finding that, despite the absence of a QDRO, the bankruptcy court
properly excluded debtor's prepetition vested interest in ERISA-qualified plan from
the estate); *Wilson v. Wilson*, 158 B.R. 709, 711 (Bankr. S.D. Ohio 1993)
(determining retirement funds were not part of debtor-plaintiff's bankruptcy estate,
even though funds were still held in defendant's retirement account).

Here, the Debtor and Mr. Myatt similarly entered into a separation
agreement awarding the Debtor an interest in Mr. Myatt's 401(k) retirement
account, which the state court then incorporated into the Consent Order. The lump-
sum distribution owed to the Debtor from Mr. Myatt's 401(k) plan has not yet been
distributed and is, therefore, still held in trust by an ERISA plan. As noted by the
Eight Circuit Court of Appeals, "[i]t logically follows that the funds still held in
trust are subject to ERISA's anti-alienation provision, and therefore excludable
from a bankruptcy estate under § 541(c)(2)." *Nelson*, 322 F.3d at 544. Despite the
absence of a QDRO, the Debtor's ownership interest in Mr. Myatt's ERISA-qualified
401(k) account is therefore excluded from her bankruptcy estate and is not subject
to this Court's jurisdiction. *Chilson*, 2016 WL 1079149, at *6 (citing *Patterson*, 504
U.S. at 759)). [8]

---

[8] Alternatively, if Mr. Myatt's retirement plan was an IRA or another non-ERISA plan, thereby
including the Debtor's interest in the distributive award in her bankruptcy estate, that interest
would likely be exemptible under N.C. Gen. Stat. § 1C-1601(a)(9). "Plans that have both the same
tax favored treatment and serve the same purpose as retirement plans are more likely to be exempt
under" North Carolina law. *In re Jolly*, 567 B.R. 480, 487 (Bankr. M.D.N.C. 2017) (citing *In re*

CONCLUSION

This outcome is supported both by current law and the public policy interest in protecting retirement assets. The Court shares the Debtor's concerns that finding marital retirement funds open to creditor claims in the intervening time between entry of an equitable distribution order and the transfer of the funds through a QDRO would leave dependent spouses vulnerable to losing their entitled retirement benefits. (Docket No. 19, ¶ 17). The Debtor correctly notes that a considerable amount of time could elapse between entry of an equitable distribution order and a QDRO, which is not unexpected given that the requirements for qualifying a DRO "are difficult to meet" and "depend upon technical points of pension law outside the competence of most family law judges and attorneys." James R. Turner, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:20 (4th ed. 2023). The Court sees no indication that Congress or the North Carolina legislature would have intended to expose retirement savings to creditor claims while debtors pursue the

---

*Garner*, No. 04-13618C-7G, 2005 WL 1288335, at *4 (Bankr. M.D.N.C. Apr. 29, 2005)). Here, the Debtor's interest in the retirement funds would still receive the same tax treatment after the transfer to her own IRA, including the "substantial" tax penalty that applies to withdrawals made before the Debtor turns 59 1/2. *See Rousey v. Jacoway*, 544 U.S. 320, 327 (2005). The Debtor's interest in the 401(k) retirement account also serves the same purpose as any other retirement plan. After completing the transfer to her own IRA, the funds will continue to serve the same purpose as before the Debtor's divorce – funding for her retirement. *See In re West*, 507 B.R. 252, 261 (Bankr. N.D. Ill. 2014). To the extent it is applicable, the Court also finds it likely that the Debtor's interest meets the standard set forth in *Clark v. Rameker*, 573 U.S. 122 (2014) to be claimed as exempt under 11 U.S.C. § 522(b)(3)(C). Based on its characteristics, the Debtor's interest in the 401(k) account represents funds "set aside for the day when an individual stops working." *Id.* at 127. The QDRO will allow the Debtor to roll over the funds, tax free, to her own retirement account, at which point it will be subject to all the tax benefits and detriments characteristic to all traditional IRAs. *Compare to id.* at 129 (finding inherited IRA allowed the holder to withdraw the entire balance at any time and without penalty). The Debtor's retirement benefits, in the form of the distributive award, also retain their intended purpose both pre and post-transfer; at every stage, the $22,677.31 within Mr. Myatt's 401(k) account serves as the Debtor's respective share of the retirement funds within the account.

complicated, court and IRS-approved, means for transferring and preserving their established benefits. The contemplated transfer to the Debtor's IRA does not alter the $22,677.31 amount's nature as retirement funds or change the tax attributes; "a retirement plan transferred pursuant to a QDRO is done expressly for the purpose of preserving the retirement nature of the plan." *In re West*, 507 B.R. 252, 261 (Bankr. N.D. Ill. 2014). In short, the Debtor is not obtaining access to a cash windfall but is instead maintaining her existing interest in retirement funds with all attendant tax benefits and penalties.

Based upon the foregoing, THE COURT FINDS as follows:

1. As recognized by and through the Consent Order entered by the Davidson County District Court, the Debtor has an ownership interest in the sum of $22,677.31 within her ex-spouse's 401(k) retirement account, which is not impacted by the absence of an executed QDRO.

2. The Debtor's ownership interest in the funds currently in her ex-spouse's 401(k) account is excluded from her bankruptcy estate and is not subject to this Court's jurisdiction.

Therefore, IT IS HEREBY ORDERED that the Trustee's Objection is OVERRULED.

**END OF DOCUMENT**

PARTIES TO BE SERVED

Catherine Myatt - Ch. 7

#23-50239

Wendell Wes Schollander, III
*via cm/ecf*

Daniel C. Bruton, Trustee
*via cm/ecf*

Catherine Mary Grossman Myatt
1706 Jades Way
Thomasville, NC 27360